Hillsborough
No. 80-019

DAVID E. ZIMMER

v.

PETER LANG AND
JOSEF ZUND

September 3, 1980

*Boyer & Kinghorn P.A.*, of Nashua (*Richard E. Boyer* orally), for the intervenor Fridolin A. Duss.

*Peter Lang* and *Josef Zund*, of Amherst, pro se, filed no brief and under Rule 18(1) were not heard orally.

BOIS, J.   This is a bill in equity to set aside a conveyance of real estate as being in fraud of creditors. Trial before a Master (*Chester C. Eaton*, Esq.) resulted in a recommended decree for the defendants, which was approved by *Loughlin*, J. All questions of law raised by the plaintiff's exceptions were reserved and transferred by *Goode*, J. We reverse the trial court and enter judgment for the plaintiff.

On July 17, 1967, the intervenor Fridolin Duss (Duss) and the defendant Peter Lang (Lang) purchased, from Chablis, Inc., equal shares in a Connecticut restaurant known as Swiss Chalet, Inc. A cash down payment was made, and Lang gave Duss a note for $6,500 as part of the financial arrangements. A note for the $25,000 balance of the purchase price was signed individually by Duss and Lang. In the normal course of business this note was assigned to the plaintiff David E. Zimmer (Zimmer), who later assigned it to Duss, from whom he recovered the unpaid balance of $12,000.

The restaurant was operated successfully until destroyed by fire in May 1969. Duss and Lang were undecided whether they should repair and reopen the restaurant and, before reaching a final decision, Lang found other employment. In February 1970, he moved to Milford, New Hampshire and became employed as a chef in a restaurant owned in part by the defendant Josef Zund (Zund).

Lang testified that shortly prior to his moving to New Hampshire in 1970, he and Duss met in their attorney's office in Connecticut to settle their respective interests. Lang claims that an agreement was reached at this meeting and that he signed a release of his interest in the restaurant in exchange for his release from any further obligations to Duss or to Swiss Chalet, Inc. No such release was introduced at the trial, where all parties were represented by counsel. Lang further testified that, subsequently, Duss never contacted him or made demand for any payment until March 20, 1972, following another meeting at the same office.

On July 20, 1970, Lang and Zund had purchased certain real estate in Milford as joint tenants. There was evidence which showed a purchase price of $23,000 and a mortgage thereon for $15,000. Shortly after Lang's return from the 1972 meeting, he consulted with an attorney recommended to him by Zund; and on May 3, 1972, he quitclaimed to Zund his interest in the property

"for consideration paid (less than $100.00)." It is this transfer which is the subject of the present appeal.

Two companion actions, from which no appeals have been taken, were simultaneously tried by the master along with the bill in equity to set aside the May 3, 1972 transfer from Lang to Zund.

The first action was brought by Duss against Lang on the $6,500 note dated July 17, 1967. The master found that "Lang admits that he paid nothing on the note but avers that he considered it . . . satisfied when he . . . released his interest in the restaurant. Except for Lang's uncorroborated testimony, there is no evidence of payment or satisfaction of this note and there also is insufficient evidence to show that Lang did . . . release his interest in the restaurant." The master ruled that the defendant failed in his burden of proving payment or satisfaction of the note and found for the plaintiff in the sum of $6,500 plus interest and attorney's fees in the sum of $3,000.

The second action was one brought by Zimmer against Lang on the $25,000 note dated July 17, 1967. Because of Zimmer's assignment, the real party in interest is Duss, who seeks to recover Lang's pro-rata share of the indebtedness. The master credited certain payments and entered a verdict for the plaintiff in the sum of $2,200 plus costs.

The bill in equity alleges that the May 3, 1972 conveyance from Lang to Zund was without fair consideration and with intent to hinder, delay, and defraud present and future creditors.

The master found and ruled in pertinent part that:

> "In May, 1972, Lang was receiving a salary of . . . ($300) weekly and the evidence does not show he was insolvent. Zund is a part owner of the . . . Restaurant but there is no evidence as to his financial status nor of any fraudulent intent on his part. . . . In a fraudulent conveyance case, unless intent is presumed by law, it is incumbent on the plaintiff to prove that the grantee as well as the grantor entered into the transaction with actual fraudulent intent. While such intent may be established by circumstantial evidence, the Master rules that [the evidence is] . . . insufficient to sustain a finding that the said conveyance . . . was fraudulent . . . ."

The plaintiff assigns as error: (1) the finding that the evidence does not show that Lang was insolvent; and (2) the master's apparent reliance on RSA 545:7, which requires proof of actual intent, as distinguished from intent presumed in law, to defraud either present or future creditors.

The plaintiff argues that the conveyance for less than $100 is one made without fair consideration and by one who is or will be thereby rendered insolvent, and is in direct contravention of RSA 545:4. This section of the Uniform Fraudulent Conveyance Act provides as follows:

> "Conveyance by Insolvent. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration."

The plaintiff alleges that the record proves the requisite statutory insolvency. RSA 545:2 I declares that a person is insolvent when:

> "the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

The plaintiff claims that the difference between the purchase price and the mortgage reflects an equity of $8,000 in the real estate, one half of which belongs to Lang. He argues that the stated consideration of less than $100 does not comport with the statutory definition of fair consideration which mandates a "fair equivalent" or "an amount not disproportionately small." RSA 545:3. He points out that Lang admits that, at the time of the transfer, title to the family residence was in his wife's name and he had no assets except for a $300 weekly salary. He further argues that the record reveals probable debts in excess of assets, as proven by the judgments entered by the master in the approximate amount of $11,700.

"A master's determinations will not be overturned unless they are unsupported by the evidence or erroneous as a matter of law." *Jenney v. Vining*, 120 N.H. 377, 415 A.2d 681 (1980). The master's rulings herein are based on findings that Lang was not insolvent in May 1972, that there was no evidence as to Zund's financial status or of any fraudulent intent on his part, and that unless presumed by law the plaintiff must prove that both the grantor and grantee had actual fraudulent intent.

An examination of the record convinces us that Lang was a person within the purview of RSA 545:4 "who [was] or [would] be . . . rendered insolvent" by a conveyance of real estate with a

substantial equity value for only "nominal" consideration and not for "fair consideration." Lang by his own admission had no other assets but a weekly salary. The evidence shows that the property in question had an $8,000 equity of redemption, but that the recited consideration paid by Zund was less than $100. The master's report indicates that demand for payment of indebtedness in an amount in excess of Lang's equity in the real estate had been made by Duss in March 1972, a few weeks before the transfer.

Under all of these circumstances we cannot but conclude that Lang was insolvent, or was rendered insolvent by the transfer without fair consideration to Zund, and that the conveyance was fraudulent without regard to Lang's actual intent. We hold that the master's findings and rulings are unsupported by the record and that he erred as a matter of law. Accordingly, we set aside the conveyance from Lang to Zund.

In view of our holding as to insolvency and inadequate consideration, we need not consider the issue of the grantee's intent.

*Reversed; judgment for plaintiff.*

All concurred.